683 P.2d 521

**NATIONAL POTASH COMPANY,**
Appellant,

v.

**PROPERTY TAX DIVISION OF the TAXATION AND REVENUE DEPARTMENT, Appellee.**

No. 7355.

Court of Appeals of New Mexico.

May 15, 1984.

Certiorari Denied June 19, 1984.

Victor R. Ortega, Thurman W. Moore, III, Carrie L. Parker, Montgomery & Andrews, P.A., Santa Fe, for appellant.

Paul Bardacke, Atty. Gen., Bridget Jacober, Ellen Bayard, Asst. Attys. Gen., Taxation and Revenue Dept., Santa Fe, for appellee.

**OPINION**

HENDLEY, Judge.

National Potash Company (Taxpayer) appeals from a special order of the Director of the Property Tax Division (Director) affirming the Property Tax Division's (Division) valuation of Taxpayer's potash mine for the 1982 tax year. Taxpayer contends that NMSA 1978, Section 7–36–24 (Repl. Pamp.1983) violates N.M. Const. art. VIII, Section 1 by using production of the previous year as the value and that Section 7–36–24 creates an irrebuttable presumption of value in violation of the due process clause of the fourteenth amendment to the United States Constitution. These are matters of first impression in New Mexico.

We affirm.

Taxpayer owns the 360 acres where the mine is located except for the mineral rights, which are leased from the United States Bureau of Land Management. Taxpayer mined 276,828 tons of potash in 1981 and 22,019 tons of potash in 1982. The year 1981 was not profitable for Taxpayer and the mine was closed on February 3, 1982.

The two statutes involved in the calculation of Taxpayer's 1982 taxes are NMSA 1978, Section 7–38–7 (Repl.Pamp.1983), and Section 7–36–24(B) and (E), which state in part:

**7–38–7. Valuation date.**

All property subject to valuation for property taxation purposes shall be valued as of January 1 of each tax year
. . . .

**7–36–24. Special method of valuation; mineral property and property used in connection with mineral property when the primary production from the mineral property is potash.**

. . . .

B. The value for property taxation purposes of improvements, equipment, materials, supplies and other personal property held or used in connection with all classes of potash mineral property is *an amount equal to the market value of all mineral production* from the potash mineral property *for the prior year,* less any royalties paid or due the United States, the state or any Indian tribe, Indian pueblo or Indian who is a ward of the

United States. "Improvements" as used in this section includes surface and subsurface structures, but does not include pits, shafts, drifts and other similar artificial changes in the physical condition of the surface or subsurface of the earth produced solely by the removal or rearrangement of earth or minerals for the purpose of exposing or removing ore from a mine.

. . . .

E. The value for property taxation purposes of class two and class three

potash mineral property is an amount equal to *fifty percent of the amount derived by deducting from the market value of all mineral production* from the potash mineral property *for the prior year* any royalties paid or due the United States, the state or any Indian tribe, Indian pueblo or Indian who is a ward of the United States.

(Emphasis added.)

The parties' calculations are as follows:

|  | Division | Taxpayer |
|---|---|---|
| 360 acres | 10,800 | 10,800 |
| Property Value of Improvements | 18,010,260 | 1,677,668 |
| Property Value of Production | 9,005,130 | 838,834 |
| Total Property Value | 27,026,190 | 2,527,302 |

Taxpayer's New Mexico Summary of Property Subject to Property Taxes for 1982 report explains the basis for Taxpayer's lower figures: "The mine was shut down on February 3, 1982 and, therefore, values based upon a full year of production would not properly reflect the true value of the property for 1982. To allow for this, figures in this return . . . reflect 34/365 of the full year values."

N.M. Const. art. VIII, Section 1 states:

Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class. Different methods may be provided by law to determine value of different kinds of property, but the percentage of value against which tax rates are assessed shall not exceed thirty-three and one-third percent. (As amended November 3, 1914, and November 2, 1971.)

The second sentence was added by the amendment of November 1971.

Taxpayer's challenge to the constitutionality of Section 7–36–24 is an attempt to avoid two aspects of the statutory method of valuation: 1) use of the year preceding the tax year, and 2) use of a base figure of market value of mineral *production* rather than actual sales or net profit.

**Production as Value**

Taxpayer argues that N.M. Const. art. VIII, Section 1, as interpreted in case law, "requires that value for property tax purposes be based upon actual fair market value . . . ." Taxpayer challenges the base value used in Section 7–36–24: the market value of all mineral production for the year preceding the tax year. Taxpayer does not challenge the Division's calculations from this base value to reach the assessed value. Taxpayer claims that the state constitutional provision prohibits the Division's use (mandated by statute) of the 1981 mine production for the base value to calculate 1982 taxes.

*Hardin v. State Tax Commission,* 78 N.M. 477, 432 P.2d 833 (1967), is the basis of Taxpayer's argument. In *Hardin,* the tax commission appealed from the district court's reversal of the tax commission's affirmance of the county assessor's valuation of taxpayer's property, a highrise, luxury apartment building in Albuquerque. The Supreme Court reversed the district court because the tax commission's decision on review from the county board of equalization was supported by the record, and a reviewing court may not substitute its own judgment for that of the administrative body. The tax commission and tax-

payer did not dispute the method used to compute base value—anticipated earnings of the apartments. However, the taxpayer argued that in calculating the anticipated earnings the commission should have used a shorter useful life and that it erred in reducing certain operation costs. The Supreme Court found that the commission's manner of calculation was supported by the record and, therefore, that the district court should not have done its own calculation.

Taxpayer relies on that part of *Hardin* which states:

> Section 1, article VIII of the State Constitution, requires taxes levied upon tangible property to be in proportion to the value thereof.... The term "value" has been variously defined.... Generally the "reasonable cash market value" reflected by sales of comparable property is to be used if there have been such sales.... However, the record makes it clear that "value" of this apartment building could not be arrived at on the basis of comparable sales. In situations where, for one reason or another, property has no such "market value," earning capacity, cost of reproduction and original cost less depreciation furnish proper criteria for consideration in determining value....

(Citations omitted.) The Supreme Court was concerned with the constitutional provision requiring that taxes upon tangible property be "in proportion to the value thereof." However, this language does not say that "value" in the constitutional provision is *defined* as "market value"; it says that market value as determined by comparable sales is *a method* of calculating the base value. "*Generally* the 'reasonable cash *market value*' reflected by sales of comparable property *is to be used* ...." (Emphasis added.) *Hardin.* The court went on to approve other methods of determining value when market value could not be determined. *Hardin* approved certain *methods* of determining value for property taxation; however, it did not disapprove any method and does not support a theory

that mine production of the preceding year is an unconstitutional method.

The foregoing analysis is further bolstered by the present statutory scheme which provides for special methods of valuation for certain classifications of property. NMSA 1978, §§ 7–36–20 to –33 (Repl. Pamp.1983). Property which is not covered by the special methods of valuation are covered by NMSA 1978, Section 7–36–15 (Repl.Pamp.1983), which reads in part:

> **7–36–15. Methods of valuation for property taxation purposes; general provisions.**
>
> . . . .
>
> B. Unless a method or methods of valuation are authorized in Sections 7–36–20 through 7–36–33 NMSA 1978, the value of property for property taxation purposes shall be its market value as determined by sales of comparable property or, if that method cannot be used due to the lack of comparable sales data for the property being valued, then its value shall be determined using an income method or cost methods of valuation. In using any of the methods of valuation authorized by this subsection the valuation authority shall apply generally accepted appraisal techniques.

As Subsection (B) makes clear, market value is not a given or an absolute, it is only a method of determining value.

Taxpayer cites *La Jara Land Developers, Inc. v. Bernalillo County Assessor,* 97 N.M. 318, 639 P.2d 605 (Ct.App.1982); *Anaconda Co. v. Property Tax Department,* 94 N.M. 202, 608 P.2d 514 (Ct.App.1979); *Petition of Kinscherff,* 89 N.M. 669, 556 P.2d 355 (Ct.App.1976); *Matter of Protest of Miller,* 88 N.M. 492, 542 P.2d 1182 (Ct. App.1975); *Property Appraisal Department v. Ransom,* 84 N.M. 637, 506 P.2d 794 (Ct.App.1973); *Kaiser Steel Corp. v. Property Appraisal Department,* 83 N.M. 251, 490 P.2d 968 (Ct.App.1971); and AG Op. No. 61–93 (1961), for various propositions it contends lends support to its position. However, in light of the narrow question involved, the constitutional provi-

sion in conjunction with particular statutes, those cases are not applicable.

### Irrebuttable Presumption

Taxpayer's contention here is that use of the preceding year's production creates an irrebuttable presumption which has no rational basis in fact and violates the due process clause of the fourteenth amendment of the United States Constitution. *See* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* ch. 15, § II (2d ed. 1983). The doctrine has been described as follows: "A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty or property." C. Antieau, *Modern Constitutional Law* § 7:18 (1969).

This contention presupposes the validity of Taxpayer's market value or actual sales argument above. The answer is that market value is not the method prescribed by the statute for determination of the base value for this kind of property and is not involved. There is no presumption that the market value of production of the previous year is equivalent to the market value as determined by comparable sales.

The special order is affirmed.

**IT IS SO ORDERED.**

NEAL and MINZNER, JJ., concur.